29 F.3d 1244
 129 Lab.Cas. P 57,773
 Stephen R. WRIGHT, Plaintiff-Appellant,
v.
ASSOCIATED INSURANCE COMPANIES INCORPORATED, Associated
State Government Contracts Incorporated, also
known as Adminastar Solutions
Incorporated, L. Ben Lytle, et
al., Defendants-Appellees.
 No. 93-3619.
 United States Court of Appeals,
Seventh Circuit.
 Argued May 11, 1994.
Decided July 21, 1994.
 
 William Sparrenberger (argued), Indianapolis, IN, for plaintiff-appellant.
 Hudnall A. Pfeiffer (argued), Christopher G. Scanlon, Baker & Daniels, Indianapolis, IN, for Associated Ins. Companies Inc., Associated State Government Contracts Inc., L. Ben Lytle, Ronald E. Rosenberg, Robert Reig, H. William Scott.
 Terry G. Duga, Dist. Atty. Gen. (argued), Office of the Atty. Gen., Agency Litigation, Indianapolis, IN, for John J. Dillon, III, Morris L. Melloy.
 Before POSNER, Chief Judge, and CUDAHY and ROVNER, Circuit Judges.
 CUDAHY, Circuit Judge.
 
 
 1
 The Indiana Comprehensive Health and Insurance Association (ICHIA) is a non-profit organization created by the insurance industry to assure the availability of health insurance to eligible residents of Indiana who apply to the association for coverage. See Ind.Code Sec. 27-8-10-2.1(a). The ICHIA operates under a plan that must be approved by the Commissioner of Insurance, and it is governed by a board of directors. Id. In October 1988 the ICHIA solicited offers from various private companies for the provision of administrative services. Associated Insurance Companies, Inc. (AICI) presented a proposal that the ICHIA accepted. In April 1989 the ICHIA and AICI entered into a "Health Insurance Risk Plan Administration Agreement" (Agreement) under which AICI agreed to provide a manager who would be "100% dedicated" to administering the ICHIA plan. AICI offered the position of this "dedicated manager" to the plaintiff, Stephen Wright.
 
 
 2
 According to Wright, before he accepted the position, he met with and received assurances from H. William Scott, who at the time was the Government Medicaid Administrator for AICI, that Wright's term of employment as the "dedicated manager" would be three years and that only the ICHIA's board of directors could affect Wright's tenure in that position. Wright sought these assurances because he was concerned that insurance companies would try to influence him and that conflict of interest problems might arise.
 
 
 3
 After Wright had accepted the position of "dedicated manager," AICI and the ICHIA amended the Agreement. By this amendment, AICI assigned its rights and obligations under the Agreement to Associated State Government Contracts, Inc. (ASGCI), an AICI subsidiary, and AICI transferred Wright from the "dedicated manager" position to the position of ASGCI vice president of risk pools. Wright's new position, like the "dedicated manager" position, was committed solely to administration of the ICHIA plan. The amendment took effect in May 1990.
 
 
 4
 In July 1990 Wright received and rejected an application to the ICHIA for insurance that he deemed incomplete. Wright maintains that two months later, Commissioner of Insurance John Dillon III and his assistant, Morris Melloy, complained to Ben Lytle, the president of AICI, about this rejection of the application. Subsequently, Ronald Rosenberg, the executive vice president of AICI, Robert Reig, the human resources government sector manager of AICI and Scott directed Wright to accept the application and issue the policy. Wright referred the matter to ICHIA's board of directors, which approved his decision to reject the application.
 
 
 5
 In November 1990 Wright was dismissed from his position with ASGCI. Wright filed a complaint pursuant to 42 U.S.C. Secs. 1983 and 1985(3), against various defendants, in which he claimed that his dismissal violated his rights under the First and Fourteenth Amendments to the Constitution. For purposes of this discussion, we classify the defendants in two groups: the "Associated Group" (AICI/ASGCI, Lytle, Rosenberg, Reig and Scott); and the "state defendants" (Dillon and Melloy). Wright alleged that the state defendants unlawfully conspired with the Associated Group defendants to fire him on account of his rejection of the application for insurance described above. He further alleged that, because he was dismissed without prior notice and a hearing, he was deprived of a property interest in his employment with AICI/ASGCI without due process of law. Wright also brought three pendent claims under Indiana law. He alleged that all the defendants intentionally interfered with his employment contract and his business relationship with the ICHIA. And he alleged that Rosenberg and Scott defamed him by telling William Brown, the Chairman of the Board of Directors of the ICHIA, that Wright had resigned when in fact he had been fired. According to Wright, Brown would have reinstated him but for this false information.
 
 
 6
 The district court dismissed Wright's suit for failure to state a claim upon which relief can be granted. See Fed.R.Civ.P. 12(b)(6). We affirm the judgment of the district court insofar as it dismissed the Sec. 1983 and Sec. 1985(3) claims and the pendent state claims of intentional interference with a contractual relationship and defamation. Nevertheless, we vacate the judgment with respect to the claim of intentional interference with an advantageous business relationship and leave that claim for the state courts.
 
 
 7
 * Wright's first argument on appeal relates to the district court's consideration of the text of the entire Agreement in ruling on the Associated Group's motion to dismiss. Wright had not attached a copy of the Agreement to his complaint. The Associated Group defendants attached to their motion to dismiss a copy of the Agreement, as it had been amended. They also appended to their motion the affidavit of David Baird, an ASGCI vice president, authenticating the copies of the documents submitted. Wright moved to exclude the affidavit on the ground that it was not made on personal knowledge and to exclude the copy of the Agreement on the ground that, because it was not an integral part of the pleadings, it could not be considered in the context of a motion to dismiss.
 
 
 8
 The district court denied Wright's motion and, in ruling on the Associated Group's motion to dismiss, considered the text of the entire Agreement. Wright contends that the district court should either have excluded the copy of the Agreement that the Associated Group submitted through the Baird affidavit or converted the motion to dismiss into a motion for summary judgment. He relies on Fed.R.Civ.P. 12(b), which provides, in pertinent part, that "[i]f, on a motion asserting the ... failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56 and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Consideration of matters outside the pleadings without allowing opposing litigants to supplement the record constitutes error. See Carter v. Stanton, 405 U.S. 669, 671, 92 S.Ct. 1232, 1234, 31 L.Ed.2d 569 (1972) (per curiam). According to Wright, the district court erred by considering the copy of the entire Agreement without affording him the opportunity to supplement the record with affidavits and exhibits in support of his interpretation of those portions of the Agreement to which he did not refer in his complaint. The issue therefore is whether the copy of the entire Agreement is "outside the pleading."
 
 
 9
 In Venture Associates v. Zenith Data Systems, 987 F.2d 429, 431 (7th Cir.1993), we held that documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim. Such documents may be considered by a district court in ruling on the motion to dismiss. That is the situation here. Wright repeatedly quotes from and refers to the Agreement in his complaint. The Agreement is central to the Sec. 1983 claim; Wright alleges that the Agreement grants him a property interest in his employment, of which the defendants deprived him without due process of law. The Agreement is also central to Wright's pendent claim of tortious interference with his contractual relationship with the ICHIA since the Agreement is the contract with which the defendants allegedly interfered. The Agreement therefore was not a matter "outside the pleading," and the district court properly considered its contents without converting the motion to dismiss to a motion for summary judgment.
 
 
 10
 Wright also contends that Baird's affidavit was insufficient to allow consideration of the Agreement because the affidavit does not demonstrate that Baird has personal knowledge of the original version of the Agreement between AICI and the ICHIA. But Baird states in his affidavit that as the vice president charged with administering the Agreement, he has personal knowledge that the attached documents are accurate copies of the original Agreement and its subsequent amendments. This is adequate.
 
 II
 
 11
 The balance of Wright's appeal relates to the dismissal of the Sec. 1983 claim and the pendent claims.[1] Our review of the dismissal of the Sec. 1983 claim is de novo. Dimmig v. Wahl, 983 F.2d 86, 87 (7th Cir.), cert. denied, --- U.S. ----, 114 S.Ct. 176, 126 L.Ed.2d 135 (1993). To state a claim under 42 U.S.C. Sec. 1983, Wright must allege facts sufficient to show that he was deprived of an interest secured by the Constitution or laws of the United States, and that the deprivation was visited upon him by a person or persons acting under color of state law. Gomez v. Toledo, 446 U.S. 635, 640, 100 S.Ct. 1920, 1923-24, 64 L.Ed.2d 572 (1980).[2] Wright alleges in his complaint that the defendants, in firing him without prior notice and a hearing, deprived him of a property interest in employment with AICI/ASGCI without due process of law.
 
 
 12
 But property interests are not ordinarily created by the Constitution; they ordinarily arise from rules or understandings that stem from an independent source such as a statute, an ordinance, Bishop v. Wood, 426 U.S. 341, 344 & n. 7, 96 S.Ct. 2074, 2077 & n. 7, 48 L.Ed.2d 684 (1976); Board of Regents v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972), or a contract. Perry v. Sinderman, 408 U.S. 593, 601, 92 S.Ct. 2694, 2699, 33 L.Ed.2d 570 (1972); Cushing v. City of Chicago, 3 F.3d 1156, 1159 (7th Cir.1993). Wright alleges in his complaint that the Agreement between the ICHIA and AICI granted him a property interest in employment with AICI/ASGCI. He relies on the following provision of the Agreement:
 
 
 13
 The Offeror [AICI] must certify that the manager of the Association's services will be dedicated to the Association's work and will not be shared with other risk pools or assigned to responsibilities other than those of ICHIA without the Association's express written consent. The ultimate choice and hiring of a manager shall be subject to the approval of ICHIA as shall his/her continuation in that position.
 
 
 14
 Even if the language of the Agreement conferred a property interest in employment with AICI/ASGCI (and it does not), Wright cannot rely on that interest because he was not a party to the Agreement. The only parties to the Agreement are the ICHIA, and AICI/ASGCI. Wright maintains that he was a third-party beneficiary of the Agreement. This is a matter of Indiana law. Under the law of that state, Wright is a third-party beneficiary only if the parties to the Agreement intended to benefit him, the Agreement imposes a duty on one of the parties in his favor and performance of the terms of the Agreement render an intended, direct benefit to him. See Tonn & Blank, Inc. v. Board of Comm'rs of LaPorte County, 554 N.E.2d 827, 828 (Ind.Ct.App.1990). The intent to benefit Wright must clearly appear from the terms of the Agreement. Id.
 
 
 15
 Nothing in the Agreement indicates that the parties intended to confer a benefit on Wright. Indeed, there is no indication that the parties intended the Agreement to confer a benefit on any employee. The Agreement is not, as Wright suggests, an employment contract. Its purpose is to set forth the terms and conditions under which AICI/ASGCI is to provide administrative services to the ICHIA. Hence, Wright is not a third-party beneficiary of the Agreement and cannot rely on it as the source of a property interest in employment with AICI/ASGCI.
 
 
 16
 Wright also alleges in his complaint that he made an oral contract with H. William Scott for a three-year term of employment as the "dedicated manager." According to Wright, this contract granted him a property interest in employment as the "dedicated manager." Nevertheless, to create a constitutionally protected property interest, a contract must, of course, be legally enforceable. Because the alleged oral contract was for more than one year, it is unenforceable under Indiana's Statute of Frauds. See Ind.Code 32-2-1-1; Mehling v. Dubois County Farm Bureau, 601 N.E.2d 5, 6 (Ind.Ct.App.1992).
 
 
 17
 As Wright points out, under Indiana law, an oral promise of employment that is unenforceable under the statute of frauds may be enforceable under the doctrine of promissory estoppel. See Jarboe v. Landmark Community Newspapers of Indiana, Inc., 625 N.E.2d 1291, 1295 (Ind.Ct.App.1993). Scott's alleged oral promise of employment might be enforceable under the doctrine of promissory estoppel, provided that the other elements of the doctrine are present. But even if the alleged oral promise were enforceable, and even if it conferred a constitutionally protected interest, the defendants did not deprive Wright of this interest. Scott's alleged oral promise was not that AICI would employ Wright for three years, but that AICI would employ Wright as the "dedicated manager " for three years. Under the terms of the May 1990 amendment to the Agreement, Wright was transferred from the "dedicated manager" position to the position of ASGCI vice president of risk pools. Thus, the defendants' dismissal of Wright in November 1990, six months after Wright had relinquished the "dedicated manager" position, did not deprive Wright of anything that Scott allegedly promised him.
 
 
 18
 Finally, Wright argues that Indiana law gives him something more than employment at will and, hence, a property interest. In Indiana, an employment relationship is terminable at the will of the employer unless there is a promise of employment for a fixed duration or the employee gives consideration in addition to his services. See Ryan v. J.C. Penney Co., 627 F.2d 836 (7th Cir.1980); McQueeney v. Glenn, 400 N.E.2d 806 (Ind.Ct.App.1980), cert. denied, 449 U.S. 1125, 101 S.Ct. 943, 67 L.Ed.2d 112 (1981). Further, an employee may have a property interest in his employment under the unique exception set forth in Romack v. Public Service Co., 499 N.E.2d 768 (Ind.Ct.App.1986), modified, 511 N.E.2d 1024 (Ind.1987). Wright argues that the Romack exception applies in this case. But the Romack exception comes into play only if: the employee is uniquely qualified for the position by virtue of his training and the highly specialized nature of the employment; the employee left lifetime employment to take his present employment; the employee was recruited by the employer to fill a position uniquely requiring a person who possessed the employee's skills and abilities; the employee advised the employer that he would leave his existing job only if the new job offered the same permanency of employment, advancement and benefits; and upon that basis, the employee was told by the employer that he would have permanent employment if he accepted the offer. Id. at 776-77. Unfortunately for Wright, despite his protestations to the contrary, he does not meet these requirements. He did not give up lifetime employment nor was he offered permanent employment.
 
 
 19
 The Sec. 1983 claim was properly dismissed because Wright has not alleged facts sufficient to establish that he had a constitutionally protected property interest in employment with AICI/ASGCI.
 
 III
 
 20
 The jurisdiction of the district court over the Sec. 1983 and Sec. 1985 claims was based on the federal question statute, 28 U.S.C. Sec. 1331, which grants federal district courts original jurisdiction over cases "arising under the Constitution, laws, or treaties of the United States." The jurisdiction of the court over the state-law claims was based on the supplemental jurisdiction statute, 28 U.S.C. Sec. 1367(a), which extends the jurisdiction of federal district courts to all claims that are sufficiently related to the claim or claims on which their original jurisdiction is based to be part of the same case or controversy within the meaning of Article III of the Constitution. After the Sec. 1983 and Sec. 1985 claims were dismissed, federal jurisdiction over Wright's suit was based entirely upon the supplemental jurisdiction statute. That statute provides that a district court "may decline to exercise supplemental jurisdiction" over pendent state-law claims if the court has dismissed all claims over which it has original jurisdiction. 28 U.S.C. Sec. 1367(c)(3). The district court in this case, after dismissing the Sec. 1983 and Sec. 1985 claims, dismissed the state-law claims on the merits. Dismissal of these state-law claims on the merits, of course, has a preclusive effect. The question here is whether the court should instead have relinquished jurisdiction over Wright's suit after it dismissed the federal-law claims.
 
 
 21
 The supplemental jurisdiction statute codified judge-made principles of pendent jurisdiction. See Brazinski v. Amoco Petroleum Additives Co., 6 F.3d 1176, 1182 (7th Cir.1993); Wentzka v. Gellman, 991 F.2d 423, 425 (7th Cir.1993). Pendent jurisdiction is a doctrine of discretion. United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). Thus, a district court should consider and weigh the factors of judicial economy, convenience, fairness and comity in deciding whether to exercise jurisdiction over pendent state-law claims. Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350, 108 S.Ct. 614, 619, 98 L.Ed.2d 720 (1988).
 
 
 22
 In the usual case in which all federal claims are dismissed before trial, the balance of these factors will point to declining to exercise jurisdiction over any remaining pendent state-law claims. Hence the general rule is that, when all federal claims are dismissed before trial, the district court should relinquish jurisdiction over pendent state-law claims rather than resolving them on the merits. Gibbs, 383 U.S. at 726, 86 S.Ct. at 1139. There are, however, unusual cases in which the balance of factors to be considered under the pendent jurisdiction doctrine--judicial economy, convenience, fairness and comity--will point to federal decision of the state-law claims on the merits.
 
 
 23
 One such unusual case may arise when the statute of limitations has run on the pendent claim, precluding the filing of a separate suit in state court. See Duckworth v. Franzen, 780 F.2d 645, 656 (7th Cir.1985); O'Brien v. Continental Illinois Nat'l Bank & Trust, 593 F.2d 54, 65 (7th Cir.1979). But there is no suggestion that statute of limitations concerns prompted the district court here to decide to retain Wright's state-law claims. Another occasion for retaining state-law claims occurs when "substantial judicial resources have already been committed, so that sending the case to another court will cause a substantial duplication of effort." Graf v. Elgin, Joliet & E. Ry. Co., 790 F.2d 1341, 1347-48 (7th Cir.1986). This exception for judicial efficiency derives from Rosado v. Wyman, 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970), where the Supreme Court, in holding that jurisdiction over the federal claim need not exist at all stages of the litigation to support resolution of the pendent claim, emphasized the "commonsense policy of pendent jurisdiction--the conservation of judicial energy and the avoidance of multiplicity of litigation." Id. at 405, 90 S.Ct. at 1214. Here there is no suggestion that the district court reached Wright's state-law claims to conserve judicial resources. This is to be expected; rarely when a case is dismissed on the pleadings can "judicial economy" be a good reason to retain jurisdiction. There was very little federal judicial investment in this case. The defendants filed their motions to dismiss within two months after the case was filed, and the district court granted the motions to dismiss before discovery commenced. At this point, the burden of the state-law claims would be the same for a federal as for a state court. In these circumstances, judicial economy is not served by the district court's retention of jurisdiction. Cf. Moses v. Kenosha County, 826 F.2d 708, 711 (7th Cir.1987) (per curiam).
 
 
 24
 The third circumstance in which judicial economy, convenience, fairness and comity may point to federal retention of state-law claims occurs when it is absolutely clear how the pendent claims can be decided. If the district court, in deciding a federal claim, decides an issue dispositive of a pendent claim, there is no use leaving the latter to the state court. See Mechmet v. Four Seasons Hotels, Ltd., 825 F.2d 1173, 1178 (7th Cir.1987). The same is true when the state-law claims are patently frivolous. See Bowman v. City of Franklin, 980 F.2d 1104, 1109 (7th Cir.1992); Martin-Trigona v. Champion Fed. Sav. & Loan Ass'n, 892 F.2d 575, 578 (7th Cir.1989). There are, of course, various shades of frivolousness. If the question whether a state-law claim lacks merit is not obvious, comity concerns may dictate relinquishment of jurisdiction. The outer bounds of the "frivolous state-law claim" type of case were defined in Brazinski v. Amoco Petroleum Additives Co., supra, 6 F.3d at 1182. There we held that retention of a state-law claim is appropriate when the correct disposition of the claim is "so clear as a matter of state law that it can be determined without further trial proceedings and without entanglement with any difficult issues of state law." Compare with Wentzka v. Gellman, 991 F.2d 423, 425 (7th Cir.1993) (retention of jurisdiction over case held improper where state law was unsettled).
 
 
 25
 Thus, the general rule is that, when all federal-law claims are dismissed before trial, the pendent claims should be left to the state courts. But there are three well-recognized exceptions to this general rule. A district court should have a good reason for retaining jurisdiction and therefore should make a finding as to the balance of judicial economy, convenience, fairness and comity to justify retention. The district court did not make this finding here but went on to decide the whole case, apparently without considering the general rule or the recognized exceptions.
 
 
 26
 We could remand to the district court for the exercise of discretion in these matters. But a remand seems unnecessary because, under the circumstances of this case, we can easily assess whether retention of jurisdiction over the state-law claims was proper. Cf. Brazinski, 6 F.3d at 1182; Bowman, 980 F.2d at 1109. Retention of jurisdiction over the claims of defamation and of intentional interference with a contractual relationship was proper because those claims can be decided in only one way. Wright alleges that the defendants intentionally interfered with his contractual relationship with the ICHIA. An element of this tort is, of course, the existence of a legally enforceable contract. See Fields v. Cummins Employees Fed. Credit Union, 540 N.E.2d 631, 640-41 (Ind.Ct.App.1989). The district court correctly found that Wright did not have a legally enforceable employment contract with the ICHIA. Thus, as in Mechmet v. Four Seasons Hotels, Ltd., supra, 825 F.2d at 1178, the claim could only be resolved in favor of the defendants. In addition, Wright alleges that Rosenberg and Scott defamed him by telling the ICHIA that he had resigned from his position with ASGCI when, in reality, he had been fired. This claim is frivolous because the alleged statement is not defamatory.
 
 
 27
 This leaves the claim of intentional interference with an advantageous business relationship. We are not prepared to hold that, as urged by the defendants, this claim is so frivolous that the district court's exercise of pendent jurisdiction over it is clearly justified. The elements of the tort in question are: 1) a business relationship; 2) knowledge by the defendant or defendants of the existence of the business relationship; 3) intentional interference with the business relationship through unlawful acts; 4) an absence of justification for the interference; and 5) damages. See Furno v. Citizens Ins. Co. of Am., 590 N.E.2d 1137, 1140 (Ind.Ct.App.1992); Watson Rural Water Co. v. Indiana Cities Water Corp., 540 N.E.2d 131, 139 (Ind.Ct.App.1989). Wright alleges that he had an advantageous business relationship with the ICHIA, and that the Associated Group defendants intentionally interfered with this relationship without justification, thereby causing him to suffer damage. The Associated Group defendants argue primarily that this claim is frivolous because the only business relationship that Wright had was with them, not with the ICHIA.
 
 
 28
 But this is not necessarily so. Wright might have had an advantageous business relationship with the Associated Group and the ICHIA. The Associated Group defendants cite no authority that would foreclose this possibility. In addition, the Associated Group defendants argue that Wright's claim is frivolous because he does not allege facts sufficient to show that by interfering with Wright's relationship with the ICHIA they acted unlawfully. But Wright argues that the Associated Group defendants sabotaged his business relationship with the ICHIA because he refused to violate Indiana law by issuing a policy to an ineligible applicant. Whether an Indiana court would find this allegation sufficient to state a claim of intentional interference with an advantageous business relationship is not readily apparent from the pleadings. Therefore, we believe that the district court should have relinquished jurisdiction and left this claim for the state courts.
 
 IV
 
 29
 For the foregoing reasons, the judgment of the district court is AFFIRMED IN PART AND VACATED IN PART as it pertains to the claim for intentional interference with an advantageous business relationship, which is dismissed without prejudice.
 
 
 
 [1]
 Wright scarcely mentions his Sec. 1985(3) claim on appeal. Dismissal of that claim was proper. To state a claim under 42 U.S.C. Sec. 1985(3), a plaintiff must allege: (1) a conspiracy; (2) for a purpose to deprive the plaintiff of equal protection of the laws or privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy, whereby the plaintiff is injured in his person or property, or is deprived of any right or privilege of a citizen of the United States. United Bhd. of Carpenters and Joiners, Local 610 v. Scott, 463 U.S. 825, 828-29, 103 S.Ct. 3352, 3356-57, 77 L.Ed.2d 1049 (1983). Wright does not allege that the defendants deprived him of equal protection of the laws or privileges and immunities under the laws
 
 
 [2]
 Section 1983 imposes civil liability upon every person who "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws."