Jose GARDUNO, Plaintiff,

v.

The QUAKER OATS COMPANY,
Defendant.

No. 92 C 7762.

United States District Court,
N.D. Illinois,
Eastern Division.

Sept. 1, 1994.

Herbert H. Victor, Chicago, IL, for plaintiff Jose Garduno.

Michael Thomas Welch, John B. Kavanagh, Quaker Oats Co., James J. Oh, Michael James Sheehan, Connelly, Sheehan & Moran, Hilary Vandever Barnes, Quaker Oats Co., Chicago, IL, for defendant Quaker Oats Co.

## MEMORANDUM OPINION AND ORDER

LEFKOW, Executive United States Magistrate Judge:

Plaintiff, Jose Garduno, a Mexican American, worked for defendant, Quaker Oats Company ("Quaker"), from 1977 until his termination in November of 1991. PC at ¶ 1.[1] During those 14 years, Garduno was employed in various positions, first serving as an account representative in Tuscaloosa, Alabama. He rose through the ranks of the company, becoming an account supervisor and an account manager in Tyler, Texas, a regional sales training manager in Atlanta, a district manager in Houston, and a zone development manager in Dallas. PC at ¶ 2–7. In January, 1988, Garduno made a lateral transfer from zone development manager in the foods division to another zone development manager position in another division within Quaker. PC at ¶ 8. In June, 1989, Garduno accepted a position in the customer financial service division in Chicago, and in June, 1990, he became manager of that division. PC at ¶ 9–10. On November 7, 1991, Garduno was discharged from Quaker for falsifying his expense account record. PC at ¶ 17.

Plaintiff does not deny that he was terminated for falsifying his expense account record because (1) he used frequent flier miles (that he had accumulated through business trips) to purchase tickets for business travel and then submitted phony receipts and was reimbursed by Quaker for tickets that he had never purchased; (2) in December of 1990 he went on business to the Fiesta Bowl in Arizona with his son who was not a Quaker employee and submitted the expense for this trip to Quaker for reimbursement; and (3) in August of 1991, he went golfing and later, when claiming reimbursement for this outing, *misrepresented the costs of his golfing outing as a business lunch and dinner.* Defendant's Statement of Undisputed Facts ("SUMF") at ¶¶ 4–6.

Plaintiff filed a timely charge of discrimination with the Illinois Department of Human Rights and the federal Equal Employment Opportunity Commission and received a "right-to-sue" letter dated December 21, 1992. PC at ¶ 18. Garduno filed the present lawsuit on November 25, 1992, alleging discrimination based on national origin under Title VII, 42 U.S.C. §§ 2000e *et seq.,* and promissory estoppel under Illinois law.[2] Jurisdiction is present. 28 U.S.C. § 1331, § 1367. Additional facts as pertinent to the two claims are set out below. The parties are presently before this court on defendant's motion for summary judgement.

### Standard of Review

Summary judgement is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgement as a matter of law. Fed.R.Civ.P. 56(c); *Hickey v. A.E. Staley Mfg.,* 995 F.2d 1385, 1388 (7th Cir.1993). When the party opposing the motion bears the burden of proof on a particular issue, it cannot rest on its pleadings alone;

---

1. The facts recited here are undisputed. References to "PC" refer to Plaintiff's Second Amended Complaint at Law. References to "SUMF" refer to the Defendant's Statement of Undisputed Facts.

2. Plaintiff claims that he was promised permanent employment in the financial division of Quaker and therefore elected not to transfer back to various sales group positions in Texas that had been offered to him. SUMF at ¶ 15–17. This reliance on the promises was detrimental in that he was fired from the financial division.

rather, it must affirmatively demonstrate by specific factual allegations that there is a genuine issue of material fact that necessitates a trial. *Beard v. Whitley County REMC,* 840 F.2d 405, 409–410 (7th Cir.1988). Rule 56(c) requires entry of summary judgement if the non-moving party fails to come forth with evidence to refute the moving party's allegations in its motion for summary judgement. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The party opposing the motion must do more than merely raise "some metaphysical doubt as to the material facts" in order to survive summary judgement. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986). Even though all reasonable inferences are drawn in favor of the party opposing the motion, a scintilla of evidence in support of the non-movant's position will not defeat a motion for summary judgment. *Brownell v. Figel,* 950 F.2d 1285, 1289 (7th Cir.1991). Where the factual allegations presented by the party opposing the motion would not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial and the district court should grant summary judgement. *Anderson v. Liberty Lobby,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Palucki v. Sears, Roebuck & Co.,* 879 F.2d 1568, 1570–71 (7th Cir.1989). On the other hand, the summary judgement standard must be applied with "added rigor" in employment discrimination cases, due to the unique importance of intent and credibility. *Kralman v. Illinois Dept. of Veterans' Affairs,* 23 F.3d 150, 152 (7th Cir.1994); *Sarsha v. Sears, Roebuck & Co.,* 3 F.3d 1035, 1038 (7th Cir.1993).

## A. Title VII National Origin Discrimination Claim

Title VII makes it "an unlawful employment practice for an employer ... to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). Garduno claims that Quaker treated him differently because of his national origin, Mexican–American.

### 1. The Prima Facie Case

Where the disparate treatment of a single employee is at issue, a plaintiff can either produce direct or indirect evidence of discrimination. *Kirk v. Federal Property Management Corp.,* 22 F.3d 135, 138 (7th Cir. 1994). In this case, Garduno relies on the indirect method of proof. Under this method, the plaintiff must first establish a *prima facie* case of employment discrimination. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). To establish a prima facie case of national origin discrimination, the plaintiff is required to show that (1) he is a member of a protected class, (2) that he was doing his work well enough to meet his employer's legitimate expectations, (3) despite his performance he was discharged, and (4) his employer sought a replacement for him. *Hong v. Children's Memorial Hospital,* 993 F.2d 1257, 1261 (7th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1372, 128 L.Ed.2d 48 (1994).

Garduno has established the *prima facie* case. It is undisputed that Garduno is a Mexican–American and is therefore a member of a protected class. It is also undisputed that he was doing his job adequately, that he was terminated from his job, and that a replacement was sought for him.[3]

### 2. Employer's Legitimate Reason for Discharge

Once the plaintiff has made the *prima facie* showing the burden shifts to the defendant to come forward with a legitimate, nondiscriminatory reason for its employment decision. *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824. Defendant has articulated a legitimate non-discriminatory reason for

---

**3.** The satisfactory performance necessary to establish a prima facie case is fairly easy to satisfy, *Flowers v. Crouch–Walker Corp.,* 552 F.2d 1277, 1283 (7th Cir.1977), and plaintiff's 14 years of employment with the defendant imply that they were sufficiently satisfied with his work to meet the prima facie showing.

Garduno's termination. Defendant explains that plaintiff was terminated because he falsified his expense account records. This reason on its face is non-discriminatory under Title VII. *See McCarthy v. Kemper Life Insurance Co.,* 924 F.2d 683, 687–88 (7th Cir.1991) (falsification of expense account records was a valid, non-discriminatory reason to fire black employee).

### 3. Pretext Analysis

■ Once the employer articulates a lawful reason for its actions, the presumption dissolves, and the burden shifts back to the plaintiff to prove that the employer's proffered reasons are a pretext for discrimination. *St. Mary's Honor Center v. Hicks,* — U.S. —, —, 113 S.Ct. 2742, 2752, 125 L.Ed.2d 407 (1993); *Anderson v. Baxter Healthcare Corp.,* 13 F.3d 1120, 1122 (7th Cir.1994). In general, pretext may be established directly with evidence that a discriminatory reason more likely motivated the employer, or indirectly by showing that the employer's proffered explanation is not credible. *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981); *Mechnig v. Sears, Roebuck & Co.,* 864 F.2d 1359, 1365 (7th Cir.1988); that is, the plaintiff must show both that the employer's proffered reason was false, and that unlawful discrimination was the real reason. *Hicks* at —, 113 S.Ct. at 2752; *Moore v. Nutrasweet Co.,* 836 F.Supp. 1387, 1395 (N.D.Ill.1993). The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff. *Hicks,* — U.S. at —, 113 S.Ct. at 2747, 125 L.Ed.2d at 407.[4] For purposes of summary judgment, if the evidence viewed in the light most favorable to the plaintiff would permit a rational trier of fact to infer that the proffered reason is a lie, the plaintiff has created a triable issue of pretext. *Anderson v. Baxter Healthcare Corp.,* 13 F.3d at 1124.

For the purposes of this lawsuit, plaintiff does not contend that Quaker's proffered reason is a lie. He concedes that he engaged in prohibited or wrongful conduct. He claims, however, that there were other similarly situated non-Mexican-American employees who also committed expense account fraud who were not terminated from their jobs. He believes that but for his national origin, he would not have been fired.

[2] Although it is up to an individual employer to decide what disciplinary action to take if an employee violates a company policy, the criterion for making such a decision must be "applied alike to members of all races, and Title VII is violated if … it is not." *McDonald v. Santa Fe Trail Trans. Co.,* 427 U.S. 273, 283, 96 S.Ct. 2574, 2580, 49 L.Ed.2d 493 (1976). An employer may justifiably discharge one who has engaged in unlawful, disruptive, or improper acts against it but only if the criteria for employee discharge are applied consistently to members of all races. *McDonnell Douglas,* 411 U.S. at 804, 93 S.Ct. at 1825. The more severe treatment of a plaintiff compared to other employees is competent evidence that the employer's stated reasons for discharge of the employee are pretextual attempts to justify discriminatory conduct. *Id.*

■ In order to demonstrate this type of pretext, a plaintiff may put forth evidence that (1) employees outside the protected class (2) who were involved in acts of comparable seriousness (3) were nevertheless retained while plaintiff was not. *Hiatt v. Rockwell Int'l Corp.,* 26 F.3d 761, 769 (7th Cir. 1994). Acts of comparable seriousness need not be violations of identical company rules, and plaintiffs are free to compare similar conduct, focusing more on the nature of the misconduct rather than on specific company rules. *Johnson v. Artim Transp. System, Inc.,* 826 F.2d 538, 542 (7th Cir.1987), *cert.*

4. The Seventh Circuit in *Anderson v. Baxter Healthcare Corp.,* 13 F.3d 1120, 1123 (7th Cir. 1994), interpreted the holding in *Hicks* to mean that the rejection by the trier of fact of an employer's proffered legitimate, nondiscriminatory reason, in addition to the *prima facie* case already proved by the plaintiff, does not entitle the

employee to judgement as a matter of law, but that the trier of fact may infer intentional discrimination from the plaintiff's proof of the *prima facie* case and from its disbelief of the reasons put forward by the employer. *See Loyd v. Phillips Brothers, Inc.,* 25 F.3d 518, 523 (7th Cir.1994).

*denied,* 486 U.S. 1023, 108 S.Ct. 1998, 100 L.Ed.2d 229 (1988).

■ In his deposition and affidavit, plaintiff states that he had been told by others of numerous non-Mexican-American employees at Quaker who committed expense account fraud but were not terminated. Because this testimony is based on what Garduno "heard" from other persons about other persons, it is hearsay offered to prove the truth of the matters asserted therein, *see* Fed.R.Evid. 801(c), namely, numerous other employees at Quaker committed expense account fraud who were not terminated. These statements would be inadmissible at trial and must therefore be disregarded on this motion.[5]

■ There is other evidence, however, that, if admitted into evidence, supports plaintiff's claim of pretext. Garduno recites in his affidavit a conversation he had at an unspecified time with Royce Knox, vice-president of Quaker's broker sales division, concerning the activities of Larry Alderson, a non-Mexican-American employee in Knox's department. Plaintiff's affidavit at ¶ 12–13. During these conversations, Knox told Garduno that Alderson had been accused of expense account fraud and various other infractions. Knox also told Garduno that although he believed the charges were true and were serious, in light of Alderson's years of service to the company, Quaker had let Alderson off with just a reprimand and had taken no further action against him. *Id.*

Also, Garduno points to a conversation he had in 1988 with Ron Brown, a zone manager in Quaker's sales division. Plaintiff's affidavit at ¶ 16. This conversation centered around the practice of claiming reimbursement for business travel tickets purchased with frequent flier miles. In this conversation, Brown told Garduno that he was aware that his subordinates sought these reimbursements and that Brown himself had approved the practice for managers in his de-

partment. *Id.* Brown, a non-Mexican-American, was dismissed for falsifying his expense reports. Garduno provided information to Quaker during the investigation of Brown. Brown was fired at some time before the Garduno matter arose. Plaintiff's Dep. at p. 89.

Defendant argues that this evidence is also inadmissible hearsay. Rule 801(d)(2)(D), Fed.R.Evid., excepts from the hearsay rule "a statement by the party's agent or servant concerning a matter within the scope of the agency or employment made during the existence of the relationship." *Friedman v. Premier Cruise Lines,* 966 F.2d 1456, 1992 WL 137586, \*2 (7th Cir.1992); *Nekolny v. Painter,* 653 F.2d 1164, 1171 (7th Cir.1981), *cert. denied,* 455 U.S. 1021, 102 S.Ct. 1719, 72 L.Ed.2d 139 (1982). Both Knox and Brown were agents of Quaker in their respective capacities, and the statements of both Knox and Brown concerned matters within the scope of their employment. Assuming the statements were made during the existence of the declarants' employment relationship (a fact plaintiff does not establish), these statements can be attributed to Quaker as an admission under Fed.R.Evid. 801(d)(2)(D).

There is also evidence that an employee named "Nixon," a non-Mexican-American, engaged in falsifying expense reports and resigned around the same time Brown was fired. Garduno testified that Nixon resigned after "significant investigation" concerning his business practices including issues regarding his expense reports. Garduno had reported to Nixon during part of his employment and Garduno testified that Nixon showed him how to falsify his reports and approved Garduno's false reports. Garduno Dep. at 83–86. Garduno was questioned by Quaker investigators concerning Nixon's activities and Garduno admitted that he "gained an understanding" from the session with Quaker on the Nixon matter that cer-

---

**5.** Under Fed.R.Civ.P. 56(e), the court may not consider inadmissible hearsay statements on a motion for summary judgment. *Hong,* 993 F.2d at 1264; *Randle v. LaSalle Telecommunications, Inc.,* 876 F.2d 563, 570 n. 4 (7th Cir.1989); *Powers v. Dole,* 782 F.2d 689, 696 (7th Cir.1986); *Martz v. Union Labor Life Insurance Co.,* 757 F.2d 135, 140 (7th Cir.1985). The evidence need

not be in admissible form, but it must be admissible in content in the sense that a change in form but not in content, for example a substitution of oral testimony for a summary of that testimony in an affidavit or deposition, would make the evidence admissible at trial. *Waldridge v. American Hoechst Corp.,* 24 F.3d 918, 921 n. 2 (7th Cir.1994).

tain aspects of what Nixon did were inappropriate." *Id.* at 87–88.

The ultimate question then is whether a reasonable trier of fact could conclude based on the evidence that Quaker took more severe action against him than it did against other violators and that it did so because Garduno was Mexican–American. Garduno compares himself to Alderson, who was not fired, and ignores Brown and Nixon, who were fired (Nixon resigned in the face of termination). The evidence concerning Alderson suggests only that an exception was made because of his long service (how long is not known) to the company. Garduno does not assert that he served a comparable length of time as Alderson, rather that "[d]espite his outstanding record of service and sacrifice to Quaker, Jose Garduno did not receive commensurable [sic] leniency." Garduno Brief at 13. There is no evidence, such as personnel records, demonstrating that minority employees as a group received harsher discipline for this type of misconduct.

■ Summary judgment is designed to head off a trial if the opposing party "does not have a reasonable prospect of prevailing before a reasonable jury—that is, a jury that will base its decision on facts and the law, rather than on sympathy or antipathy or private notions of justice." *Palucki v. Sears, Roebuck & Co.,* 879 F.2d 1568, 1572 (7th Cir.1989). Here, all of plaintiff's evidence comes from his own mouth. He has no testimony or affidavits or any other witness confirming his allegations and statements.

Although strictly speaking, an issue of fact exists (if the statements concerning Knox and Brown are admissible), the most plaintiff can establish is that one non–Mexican–American was known to have falsified his expense accounts and was not fired while two other non–Mexican–Americans were known to have falsified their expense accounts and were fired, along with plaintiff, a Mexican–American who was also fired for that reason. The court concludes that plaintiff does not on this evidence have a reasonable prospect of prevailing before a reasonable jury. For this reason, defendant's motion for summary judgment on plaintiff's Title VII claim will be granted.

Because summary judgement has been granted in defendant's favor in regard to plaintiff's Title VII claim alleging discrimination based on national origin, the only remaining claim is an Illinois common law claim of promissory estoppel. Although the court may assert supplemental jurisdiction over this claim, 28 U.S.C. § 1367(a), it also has discretion to decline to take jurisdiction over the state law claim under the doctrine of *United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966); *see* 28 U.S.C. § 1367(c)(2).[6] This circuit has consistently held that, where a federal claim drops out before a trial, a district court should not retain the state claims absent extraordinary circumstances. *Wentzka v. Gellman,* 991 F.2d 423, 425 (7th Cir.1993) (citing cases).

Prior cases have identified the types of circumstances the court considers extraordinary. These circumstances include the existence of a federal defense to a state law

---

**6.** 28 U.S.C. § 1367 provides in pertinent part as follows:

   (a) Except as provided in subsections (b) and (c) or as expressly provided otherwise by federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve

the joinder or intervention of additional parties.

\*　　\*　　\*　　\*　　\*　　\*

   (c) The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—

\*　　\*　　\*　　\*　　\*　　\*

   (3) The district court has dismissed all claims over which it has original jurisdiction, or

   (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(a) and (c).

682

claim, *Graf v. Elgin, Joliet & Eastern Ry. Co.*, 790 F.2d 1341, 1346–48 (7th Cir.1986), where the statute of limitations has run on the filing of the pendent state claim, *Blau Plumbing, Inc. v. S.O.S. Fix–It, Inc.*, 781 F.2d 604, 611 (7th Cir.1986), where substantial judicial resources have already been committed to the state law claim, *Wright v. Associated Insurance Companies, Inc.*, 29 F.3d 1244, 1250 (7th Cir.1994), and where the correct disposition of the pendent claim is "so clear as a matter of state law that it can be determined without further trial proceedings and without entanglement with any difficult issues of state law." *Brazinski v. Amoco Petroleum Additives Co.*, 6 F.3d 1176, 1182 (7th Cir.1993). However, where state law is unsettled, *Wentzka*, 991 F.2d at 425, or the state law claim is patently frivolous, *Bowman v. City of Franklin*, 980 F.2d 1104, 1109 (7th Cir.1992), retention of jurisdiction is improper.

This court has not found has not found any extraordinary circumstances which would lead it to believe that the retention of jurisdiction over the state law promissory estoppel claim is necessary in this case. Accordingly, plaintiff's action for promissory estoppel is dismissed without prejudice to plaintiff refiling it in the Illinois courts.[7]

### ORDER

Defendant's motion for summary judgment is GRANTED. The clerk is directed to enter judgment in favor of defendant on plaintiff's complaint.

---

**7.** It is this court's understanding that plaintiff's claim is not barred by the statute of limitations. A civil action based on an unwritten contract must be commenced within five years after the cause of action accrues. *See* 735 ILCS 5/13–205 (1992).