Tonya **COWGILL, on her own behalf and as personal representative of the Estate of Danny Cowgill, Plaintiffs,**

v.

**CITY OF MARION, Marion Police Officers John Walls and Warland Artis, Jimmy Dean Mahoney, and the Marion Hawk Shop, Defendants.**

No. 1:00CV0304.

United States District Court, N.D. Indiana, Fort Wayne Division.

Dec. 28, 2000.

Christopher C. Myers, Lori W. Jansen, Aretha C. Green, Christopher Myers and Associates, Fort Wayne, IN, for plaintiffs.

James S. Stephenson, Michael R. Morow, Stephenson Daly Morow and Kurnik, Indianapolis, P. Robert Dawalt, Jr., Marion, Robert T. Keen, Jr., Heidi K. Ellison, Miller Carson Boxberger and Murphy, Fort Wayne, IN, for defendants.

## MEMORANDUM OF DECISION AND ORDER

WILLIAM C. LEE, Chief Judge.

This matter is before the Court on the "Motion to Dismiss Second Amended Complaint" filed by the defendants City of Marion, John Walls and Warland Artis on November 13, 2000. Plaintiffs responded to that motion on November 27, 2000, to which the defendants filed a reply on December 4, 2000. For the following reasons, the motion to dismiss will be granted.

### Discussion

Plaintiff Tonya Cowgill is suing in her individual capacity and in her capacity as personal representative of the estate of Danny E. Cowgill. Defendant City of Marion is a municipality organized under the laws of the state of Indiana which, during all relevant times, employed defendants John Walls and Warland Artis as police officers. The thrust of the federal claims in this case is that the defendant city had inadequate and ineffective training for its police officers and that the individual police officer's omissions resulted in the death of plaintiff's decedent. Additionally, there are state law claims, some of which are directed to the defendant Marion Hawk Shop and its owner, defendant Jimmy Dean Mahoney.

According to the Second Amended Complaint, the facts underlying the filing of this lawsuit are as follows. On August 26, 1998, an argument ensued at the Marion Hawk Shop in Marion, Indiana between Danny E. Cowgill and Jimmy Dean Mahoney. That argument arose as a result of Mr. Mahoney failing to take back a defective telephone which Mr. Cowgill had purchased. The argument escalated and the police were called.

Police officers John Walls and Warland Artis responded to the scene. The complaint incorporates by reference a tort claim notice filed by the estate of Danny Cowgill which details what allegedly happened as follows:

On or about August 26, 1998, Danny E. Cowgill was engaged in a verbal altercation with the owner of the Marion Hock Shop[1] and the police were called. Two different police vehicles arrived, a regular squad car and a type of truck which was marked as a police vehicle. Mr. Cowgill was waiting outside of the store attempting to calm down. Cowgill informed the officer who began questioning him that he had a heart condition and that "my heart is hurting right now." The officer, believed to be John Walls, instructed Mr. Cowgill to move a short distance away and wait while the officer spoke with the owner of the Marion Hock Shop. A short time later, Mr. Cowgill was observed by his wife lying on the parking lot and she screamed, "He's having a heart attack." Neither police officer responded, one was sitting in his car with one foot out and the other was in his truck with the windows up. The officer in the truck leaned forward and looked at Cowgill lying on the ground approximately 7–8 ft. away, but did not respond. Mrs. Cowgill screamed at the police officer in the car to call for an ambulance. Mrs. Cowgill finally ran to the truck, pulled open the door and screamed again, at the officer to call for an ambulance. A woman, Stacie Diskie, emerged from the Hock Shop and stated that she was an EMT and began to work to resuscitate Mr. Cowgill. She stated to the officer in the car, "This man's not breathing. I need your help and any airway kit you might have." The officer in the car responded, "I'm not doing that" and neither officer got out of his vehicle. A short time later firemen responded to the scene and they assisted the EMT in her ef-

---

1. Given the differences in spelling as between the complaint and the tort claims notice, it is unclear whether the proper name of the store is the Marion *Hawk* Shop or the Marion *Hock* Shop.

forts. Mr. Cowgill was transported to the hospital where he later died.

(Second Amended Complaint, Ex. A.. (footnote added)). The Second Amended Complaint goes on to assert that the police officers told Danny Cowgill to "wait just outside the store," which effectively made him not free to leave the scene. (Second Amended Complaint ¶ 5).

Based upon the foregoing, suit was filed in this Court alleging section 1983 liability as well as state law claims for negligence and wrongful death. The defendants to the federal claims have moved to dismiss the claims brought under 42 U.S.C. § 1983 for failure to state a claim upon which relief may be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

■■■ A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint for failure to state a claim upon which relief may be granted. *See, Autry v. Northwest Premium Services, Inc.,* 144 F.3d 1037, 1039 (7th Cir.1998). All facts alleged in the complaint and any inferences reasonably drawn therefrom are to be construed in the light most favorable to the plaintiff. *See, Marshall–Mosby v. Corporate Receivables, Inc.,* 205 F.3d 323, 326 (7th Cir.2000). Dismissal is warranted only if the plaintiff can prove no set of facts in support of his or her claims that would entitle plaintiff to relief, *See, Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), or if the complaint fails to give adequate notice of the claim, *see, Walker v. National Recovery, Inc.,* 200 F.3d 500, 503 (7th Cir.1999).

Applying those procedural standards to the substantive law which has developed in this area, the Court must. conclude that insofar as the complaint is grounded in section 1983, it must be dismissed. This is so because the officers in question, based upon the peculiar facts in this case, had no duty to the plaintiff's decedent to render or seek medical care.

The Due Process Clause of the Fourteenth Amendment provides that "[n]o state shall...deprive any person of life, liberty or property, without due process of law." In *DeShaney v. Winnebago County Dept. of Social Services,* 489 U.S. 189, 195, 109 S.Ct. 998, 1003, 103 L.Ed.2d 249 (1989), the United States Supreme Court rejected an argument that the Due Process Clause of the Fourteenth Amendment required a state to protect the life, liberty and property of its citizens against private actors noting that "[t]he clause is phrased as a limitation on the State's power to act, not as a guarantee of certain minimum levels of safety and security." In doing so, the Supreme Court noted that the Due Process Clause confers "no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual." *Id.* at 196, 109 S.Ct. at 1003. This is so because "[i]f the Due Process Clause does not require the State to proved [provide] its citizens with particular protective services, it follows that the State cannot be held liable under the Clause for injuries that could have been averted had it chosen to provide them." *Id.* at 196–97, 109 S.Ct. at 1003–04.

■■■ All that said, the Supreme Court went on to recognize that "[i]t is true that in certain limited circumstances, the Constitution imposes upon the State affirmative duties of care and protection with respect to particular individuals." *Id.* at 198, 109 S.Ct. at 1004. The Court then "reviewed two areas where a 'special relationship' may be created, imposing a due process duty to protect: (1) custodial settings in which the state has limited the individual's ability to care for himself, and (2) when the state affirmatively places the individual in a position of danger the individual would not have otherwise faced." *Estate of Stevens v. City of Green Bay,* 105 F.3d 1169, 1174 (7th Cir.1997)(citing *DeShaney* at 199–202, 109 S.Ct. at 1005–07).

Under *DeShaney* then, it may fairly be said that the defendant police officers in this case would have no constitutional duty to act unless it could be said that Danny Cowgill was either in custody or had been placed in a position of danger. The allegations of the second amended complaint do not support either theory.

■■■ One " 'special relationship' possibly implicating the protections of the Due Process Clause under *DeShaney* is where the state creates a dangerous situation or renders citizens more vulnerable to danger." *Estate of Stevens,* 105 F.3d at 1176. However, "to recover under this theory, the estate must demonstrate that the state greatly increased the danger to [Danny Cowgill] while constricting access to self-help; it must cut off all avenues of aid without providing a reasonable alternative. Only then may a constitutional injury have occurred." *Id.* at 1177.

Here, it cannot be said that the state (i.e. the Marion police officers) either created a danger or greatly increased the danger to Danny Cowgill. The most that can be said is that Danny Cowgill suffered a heart attack as a result of his altercation at the Marion Hawk Shop and not because of anything the police officers did or did not do. Moreover, it cannot be said that the police officers cut off all avenues of aid. To the contrary, the Second Amended Complaint suggests that Mrs. Cowgill was free to call for aid and indeed an EMT happened upon the scene. There is no suggestion that either could not seek to help Danny Cowgill because of any actions or inactions by the police officers.[2]

■■■ That leaves the possibility that Mr. Cowgill was in custody for purposes of *DeShaney*. The Supreme Court in *DeShaney* did not definitively define "in custody" though it did cite cases relating to incarceration and institutionalization as examples of deprivations of liberty which would trigger due process protection. "Initially, affirmative obligations to protect certain citizens grew out of prison situations, in which the state deprived prisoners of the liberty to care for themselves, *see Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), and involuntary commitment of mental patients, for the same reason, *see Youngberg v. Romeo,* 457 U.S. 307, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982)." *Reed v. Gardner,* 986 F.2d 1122, 1124 (7th Cir.1993). "The guiding principle of these cases is that, when a state takes custody of a person, 'the Constitution imposes upon it a corresponding duty' for his protection. *DeShaney,* 489 U.S. at 200, 109 S.Ct. at 1005." *Id.* at 1124–25. "Inaction by the state in the face of a known danger is not enough to trigger the obligation; according to *DeShaney,* the state must have limited in some way the liberty of a citizen to act on his own behalf." *Id.* at 1125.

In the present matter, it can hardly be said that Danny Cowgill's liberty to act on his own behalf was limited by the action of the police officers.[3] Even accepting as true the notion that he was told to wait to be questioned, this would not satisfy the "in custody" requirement for purposes of the *DeShaney* exception.

The *DeShaney* "in custody" requirement is not the same as that for purposes of Fourth Amendment analysis. Rather, it is narrower. As was explained by the Seventh Circuit in *Estate of Stevens,* 105 F.3d at 1175, "[t]he Supreme Court's express

---

**2.** The present case is a far cry from cases such as *Ross v. United States,* 910 F.2d 1422, 1431 (7th Cir.1990), where *DeShaney* was found not to preclude an action where the facts in the complaint suggested that the county had a policy of preventing unauthorized civilians from attempting to rescue persons in danger of drowning in Lake Michigan even though the "county's replacement protection would not effect a rescue."

**3.** True, the fact that he was having a heart attack may have limited his ability to act on his own behalf, but that, of course, was not the doing of the police officers. Moreover, Mrs. Cowgill's ability to act was not hampered by the police officers.

rationale in *DeShaney* for recognizing the constitutional duty does not match the circumstances of a simple arrest: 'when the State by the affirmative exercise of its power so retrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs—e.g., food, clothing, shelter, medical care, and reasonable safety—it transgresses the substantive limits on state action set by the Eighth Amendment and the Due Process Clause."' *Id.* (citations omitted). "This rationale on its face requires more than a person riding in the back seat of an unlocked police car for a few minutes." *Id.*

Certainly if the rationale in *DeShaney* does not match the circumstances of a simple arrest and requires more than that a person be placed in the back seat of a police car for more than a few minutes to constitute being "in custody," a police officer's directive that a citizen await questioning cannot constitute "in custody" for purposes of *DeShaney*. Such a directive does not, in the words of *DeShaney*, "so restrain[ ] an individual's liberty that it renders him unable to care for himself."

While citing numerous cases in its response brief, plaintiffs cite no cases which would support the notion that the conclusory allegations in the complaint would rise to the level of Danny Cowgill being "in custody" for purposes of *DeShaney*. Nor has plaintiff shown how the facts alleged in the Second Amended Complaint would support the notion Danny Cowgill was placed in danger for purposes of a *DeShaney* analysis. Such failures to cite cases segues into yet a different reason why the police officers are entitled to dismissal of the federal claims against them—they are entitled to qualified immunity.

"Qualified immunity shields the officers from suit 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Sledd v. Lindsay*, 102 F.3d 282, 287 (7th Cir.1996)(quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982)). "The inquiry focuses on the objective legal reasonableness of the action, not the state of mind or good faith of the officials in question." *Erwin v. Daley*, 92 F.3d 521, 525 (7th Cir.1996). A two step analysis is employed: "(1) Does the alleged conduct set out a constitutional violation? and (2) Were the constitutional standards clearly established at the time in question?" *Kernats v. O'Sullivan*, 35 F.3d 1171, 1176 (7th Cir.1994). "[P]laintiff bears the burden of showing that the officer violated a clearly established constitutional right...." *Clash v. Beatty*, 77 F.3d 1045, 1047 (7th Cir.1996).

Here, plaintiffs have not met their burden, particularly considering that qualified immunity "gives public officials the benefit of the doubt." *Elliott v. Thomas*, 937 F.2d 338, 341 (7th Cir.1991), *cert. denied*, 502 U.S. 1074, 112 S.Ct. 973, 117 L.Ed.2d 138 (1992). " 'Closely analogous cases, those decided before the defendant acted or failed to act, are required to find that a constitutional right is clearly established.'" *Rice v. Burks*, 999 F.2d 1172, 1174 (7th Cir.1993)(quoting, *Rakovich v. Wade*, 850 F.2d 1180, 1209 (7th Cir.), *cert. denied*, 488 U.S. 968, 109 S.Ct. 497, 102 L.Ed.2d 534 (1988)).

As indicated previously, plaintiffs forward no cases which present closely analogous facts which would suggest that defendants acted or failed to act as required by the Constitution.[4] As such, the

---

**4.** In their response to the motion to dismiss, plaintiffs repeatedly note that they allege that Danny Cowgill was in custody. Merely alleging that he was in custody, however, does not make it so. Quite the contrary, plaintiffs allege more than that Danny Cowgill merely was "in custody"—they allege that he was "in custo-

dy" because the officers instructed him to wait outside the store as he was a "suspect" for misdemeanor battery on Mahoney. As the foregoing discussion makes clear, *DeShaney* speaks in terms of "incarceration, institutionalization, or other similar restraint of personal liberty" which is to say an "affirmative

police officers are entitled to qualified immunity which, after all, is an "accommodation for reasonable error...because officials should not err always on the side of caution because they fear being sued." *Hunter v. Bryant,* 502 U.S. 224, 112 S.Ct. 534, 537, 116 L.Ed.2d 589 (1991).

■■■■ With the foregoing conclusions, it follows that any section 1983 claims against the city must fail. To establish a section 1983 claim against the City of Marion, it must be shown that the city (actually its police department) maintained an express policy of depriving individuals of their constitutional rights, *see, McTigue v. City of Chicago,* 60 F.3d 381, 382 (7th Cir.1995), that its practice of depriving individuals of their constitutional rights, though not authorized or not written, was so widespread so as to have the force of law, *Board of County Commissioners of Bryan v. Brown,* 520 U.S. 397, 117 S.Ct. 1382, 1388, 137 L.Ed.2d 626 (1997), or that a person with final policy-making authority, made a deliberate choice to either deprive plaintiff of some constitutional right, *see, West v. Waymire,* 114 F.3d 646, 651–52 (7th Cir.) *cert. denied,* 522 U.S. 932, 118 S.Ct. 337, 139 L.Ed.2d 261 (1997), or acquiesced in such a deprivation turning a "blind eye for fear of what [he] might see." *Lanigan v. Village of East Hazel Crest,* 110 F.3d 467, 477 (7th Cir.1997).

In the present matter, there is no evidence which would support such a claim. There has been no showing of an express policy or widespread practice to deprive citizens of Marion of their constitutional rights, let alone to countenance the failure to provide medical care to one in custody.[5]

Nor has there been a showing of a deliberate intent to violate plaintiffs' rights nor a deliberate indifference to any such violations.[6] In any event, this Court's conclusion that the individual police officers did not deprive plaintiff of any constitutional right probably means that any claim against the city would fail as well. *See, City of Los Angeles v. Heller,* 475 U.S. 796, 799, 106 S.Ct. 1571, 1573, 89 L.Ed.2d 806 (1986)(per curiam)(emphasis in original)("If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have *authorized* the use of constitutionally excessive force is quite beside the point").

■■■■ That leaves for consideration the state law claims. Since this Court is granting the motion to dismiss in favor of the federal defendants on all claims over which it had original jurisdiction the court has the discretion to dismiss the remaining state claims pursuant to 28 U.S.C. § 1367(c)(3). "A district court should consider and weigh the factors of judicial economy, convenience, fairness and comity in deciding whether to exercise jurisdiction over pendent state-law claims." *Wright v. Associated Insurance Companies, Inc.,* 29 F.3d 1244, 1250 (7th Cir.1994) (citations omitted). "In the usual case in which all federal claims are dismissed before trial, the balance of these factors will point to declining to exercise jurisdiction over any remaining pendent state-law claims." *Id.*

■■■■ Here, the court finds that this is such a usual case and that it should decline to exercise jurisdiction over the state law claims. The case is essentially in its infancy—the case was filed in July of this year

---

5. exercise of [a state's] power [which] so restrains an individual's liberty that it renders him unable to care for himself...". *DeShaney,* at 200, 109 S.Ct. at 1005. Here, the allegations suggest how Danny Cowgill was "in custody" from plaintiffs' own perspective and this Court is "not required...to ignore any facts alleged in the complaint that undermine the plaintiff[s'] claims." *Arazie v. Mullane,* 2 F.3d 1456, 1465 (7th Cir.1993).

5. It must be borne in mind that this Court has concluded that Danny Cowgill was not in custody for purposes of *DeShaney.*

6. In fact, the complaint alleges that the city had in place certain standard operating procedures including that units arriving on the scene are required to assist injured persons and to secure medical assistance for individuals who are injured.

and the most recent amended complaint was not filed until November 1, 2000. There has not been a substantial amount of judicial resources committed to this file: the only real time spent being on a couple of conferences and this Memorandum of Decision and Order. Further, how the state law claims should be resolved is not crystal clear.[7] Given these factors, the court will not retain jurisdiction over the state law claims for, as the Seventh Circuit in *Wright* made clear, "[a] district court should have a good reason for retaining jurisdiction and therefore should make a finding as to the balance of judicial economy, convenience, fairness and comity to justify retention." *Wright* at 1251.

### Conclusion

On the basis of the foregoing, the motion to dismiss filed by defendants City of Marion, John Walls and Warland Artis on November 13, 2000 is hereby GRANTED. Judgment shall be entered for those defendants respect to all federal claims. All state law claims against those same defendants and the other named defendants are hereby dismissed without prejudice.

---

7.  With regard to this factor, the Seventh Circuit indicated that retention should only occur "when it is absolutely clear how the pendent claim can be decided" such as when the decided federal claim is dispositive of the state law claim or "when the state law claims are patently frivolous.... If the question whether a state-law claim lacks merit is not obvious, comity concerns may dictate relinquishment of jurisdiction."